David Glen Wing Ching is here for Andrews and Robert Markovitch is here for Pounds and Mr. Ching, you may begin. Mr. Ching, it looks like you're muted. We can't hear you. And although you may not be muted, you need to sort of turn the volume on your computer. It might be check your, check your headphones. Sometimes they have a button on them and you can hear me. There you go. Oh, thank you. Test one, two, three. That's fine. Thank you. Good morning. May it please the court. My name is David Chang, the counsel for the appellant, Ms. Oqueshia Andrews in this case. Your honor, this is a sexual assault case where we're alleging that Ms. Andrews, a female inmate at the Douglas County jail was sexually assaulted by one of the deputy sheriffs. Would the court like a brief recitation of the facts in this case? I don't think they're necessary. Thank you. Your honor, the issue in this particular case is whether or not the 11th amendment extend immunity to Georgia sheriffs for the function of operating as jails. We argued today that the answer to this question is no. And the United States Supreme Court case of McMillan versus Monroe County ultimately controls the outcome of this case. I thought that, I thought that in your brief, you said that our later case in Purcell controls outcome. That is correct, your honor. We had cited the Purcell case because that is the case that the district court had relied on. However, we argue that based upon the hierarchy to federal courts, because the United States Supreme Court has superiority over the 11th Circuit Court of Appeals, and because McMillan's analysis applies in this case, McMillan is the case that we should focus on. But Purcell was a jails operation case, and Purcell disagrees with you on what McMillan requires. So you've got to persuade us to overrule Purcell to prevail in this case, haven't you? Your honor, if I may, I would like to deviate from Purcell, and the reason for that is because in Purcell, the federal court did not really conduct much analysis in Purcell other than to rely upon its holding in Manders versus Lee. As the court has seen, I have spent considerable time arguing the Manders factors and not necessarily Purcell because Purcell did not conduct much analysis. Yeah, but Purcell is a holding that controls unless and until it's overruled en banc or by the Supreme Court, doesn't it? I thought that was the concession of Blue Brief 12 and Note 2. Am I wrong? That is correct. However, I can argue Purcell just to the extent that it impliedly goes over the factors that the 11th Circuit Court of Manders and other holdings. Proceed, I just wanted to make sure that I've read your brief. Thank you, your honor. So since the court has... Counsel, can you make an argument that the test that we use to determine if a person acts as an arm of the state is fact-dependent and not appropriate at the motion to dismiss stage? Can you make an argument in support of that proposition? Your honor, respectfully, I would actually argue that the district court did not err in that particular respect because in the motion to dismiss stage, the plaintiff alleged certain facts and the district court is correct in the aspect of assuming the factual basis of the facts in the complaint. In this case, where we allege that the Douglas County Sheriff's Office had a policy of having male deputy sheriffs supervising female inmates, and the district court is correct in making a judgment based upon federal law in that case, and it's not necessarily fact-dependent later on. It's not fact-dependent whether a sheriff is an arm of the state? That's not an issue of fact? We would argue that it's an issue in law. And your honor, since the court has brought my attention to the four factors that had been listed over in Manders, which was relied upon by Purcell, I would go over the factors in turn. The 11th Circuit Court of Appeals looks to four factors to determine whether or not a sheriff is an arm of the state, entitling it to 11th Amendment immunity. First, they look at how the sheriff defines the sheriff's office. Two, they look at what degree of control the state maintains over the sheriff's office. Three, where the sheriff derives its funds. And four, whether a judgment against the sheriff would be a drain on the state treasury. Now, it's important to note that these factors look at the presence of state characteristics and whether or not the presence of state immunity. And that is because it is precisely the state actor status which grants a local government official immunity. Otherwise, there would be local government liability under Monell versus New York City Department of Social Services. Therefore, today, while theoretically we do not need to prove county characteristics, we just need to prove the absence of state characteristics. However, as a practical matter, we will argue for county characteristics to the extent that it will automatically preclude the state characteristics of the sheriff's office. We first look to the Georgia State Constitution and see that the Georgia State Constitution actually lists the sheriffs as county officers under Article 9, Section 1, Paragraph 3. And the Georgia State courts in numerous occasions have held that the sheriff is a county officer. In fact, in our brief, we had pointed to the fact that the 11th Circuit Court of Appeals has previously noted there are over 30 cases in which the Georgia State courts themselves have held that a sheriff is a county officer. Under OCGA 42-41, the Georgia State law recognizes that the jailer is subject to the supervision of county governing authority. And under OCGA 42-5-2A, the state law allocates fiscal responsibility between county inmates and the state prisoners. While the state prison can put certain state prisoners within the confines of the county jail, if the county has to provide emergency medical services, the state is required to reimburse the county. This shows a clear delineation of fiscal responsibility for the operation and maintaining of prisoners. Counselor, is it your position that your client was a county prisoner or a state prisoner? In other words, was she there on a county violation or a state violation? She was there on a state violation, Your Honor. However, we argue that she was in the county jail as a county inmate. Was the state violation a felony, alleged felony, something? I'm not sure, Your Honor. I'm not sure. But it was a state law? Yes, it was a state law, Your Honor. However, we argued the fact that the county jail inmates as the enforcement of people violating state law is irrelevant to this particular case because in McMillan, the United States Supreme Court requires the court to look at whether or not a sheriff is a state actor on a function-by-function basis. The fact that a sheriff incarcerates people in the county jail, putting them in the custody of the county jail, that is law enforcement function. But how it operates, how the sheriff operates his jail on a day-to-day basis, that is actually an operations function, which is the issue in this particular case. Because the Georgia State Constitution lists sheriffs as county officers and the Georgia State Court has listed that sheriffs are county officers on numerous occasions, this court should take the state definition factor to favor, holding that the sheriff is a county actor when it operates its own jails. The next question is, what degree of control does the state maintain over the sheriff for the function of operating his jails? We argued that there is no state law which gives control of the sheriff's jail operations to the state of Georgia. Again, the absence of state control is sufficient to defeat extending Eleventh Amendment immunity because it is the state actor attributes which justifies extending immunity. However, in this particular case, we also have non-state actors who operate some degree of control over the sheriff. While the sheriff is the main final policymaker for how it runs its jails, the sheriff is subject to the control of the county electorate. If the residents are not happy with the sheriff, they can vote him out of the office. Under OCGA 42-41A, the county commission does have some indirect control over the county sheriff by conducting grand jury investigations to see whether or not the county jail is being run properly. Because the state has zero control over the sheriff and how it runs its county jails, we argue that the control test also favors treating sheriffs as a county actor and not extending Eleventh Amendment immunity. The third factor is where the sheriff derives its funds. In Manders, the court acknowledged that the sheriff's budget is being funded by the county and under OCGA 42-5-2A, it is the county that funds the operation of the jail and under OCGA 36-95A, it is the county that funds the physical construction of the county jail. These facts for the mere purpose of seeing whether or not the sheriff derives its funds from the state, it is dispositive that the sheriff does not derive his funds from the state, and this factors favor characterizing the sheriff as a county actor. Mr. Ching, you're arguing my dissent in Manders. The problem is Manders is binding on us and we have to follow Manders. Your Honor, in Manders, the issue in that particular case is whether or not the issue of Manders is the court looked to the sheriff's function of its use of force policy at the jail. In this particular case, we are looking at a different function, which is the jail's operations, how the sheriff allocates his resources within the jail in order to make it a safe environment for the inmates. And the last factor under Manders is... So your argument, as I understand it, is we cannot look at the particular function in which the defendant was engaged when taking actions out of which liability is asserted to arise at the motion to dismiss stage. Is that your argument? I'm sorry, Your Honor, I didn't hear your question. We have to look at these four factors and state actor factors. We cannot consider them at the motion to dismiss stage. The court should consider these functions at the motion to dismiss stage. And the last factor under Manders is the most important factor, in my opinion, which is whether a judgment against the sheriff would drain the state treasury. And the Manders court acknowledges that a judgment entered against the Georgia sheriff is not paid out of the state treasury. It's not even paid out of the county treasury. It's actually paid out the sheriff's independent budget. And under the United States Supreme Court jurisprudence, this is the most important factor. And that is the United States Supreme Court case of Hess versus the Transportation Commission of Hudson Corporation. And because this is the most important factor, and the Manders court acknowledges that a judgment paid against the sheriff does not implicate state funds, this should convince the court to not extend a lump of immunity to the sheriff. Thank you. All right. Thank you, Mr. Chairman. Mr. Markovich. May it please the court. My name is Robert Markovich. I represent the affilee in this case, Sheriff Tim Pounds, who's the sheriff of Douglas County, Georgia. Just have a few things to say, which is, obviously, we agree with your remarks, Judge Wilson and yours, Judge Carnes, that this case is totally controlled by both Manders and Purcell. And Purcell, that involved an inmate beating. There was a section 1983 claim against the sheriff and the jail administrator for failing to prevent that beating. And the court wrote, and that's Purcell at 1325, that's 400 F3rd, 1313 at 1325. Manders controls our determination here. Sheriff Kite functions as an arm of the state, not of Toombs County, when promulgating policies and procedures governing conditions of confinement at Toombs County Jail. And at issue here, as alleged by the appellant, who's the plaintiff below in her complaint, her amended complaint, that's document eight, paragraph 18, is exactly a condition of confinement. That's the manner of supervision. As she alleges, defendant sheriff operates and maintains his jail with a policy or custom of allowing its deputy sheriffs to have cross gender supervision of inmates without reasonable safeguards in place. It's the violation of that policy, which forms the basis for their claim. There can be no such claim under Purcell, which follows directly from the on bank decision in Manders. And what we've heard from my worthy opponent is simply a request that the court reconsider Purcell and Manders, which of course this panel is unable to do at this time. Unless court has questions, we'll rest on our briefs, your honor. I see that Mr. Jane, you've reserved some time for rebuttal. Yes, your honor. I noticed there may be something, but never mind. Your honor, in this particular case, I reiterate the fact that in this particular case, we acknowledge that Purcell is the holding that binds the outcome of this particular case. However, Purcell relies upon its analysis upon Manders. And as I have argued here today, the way that the Manders court had analyzed the factors, biases in favor of the state and discount the county characteristics. And we asked that the court take a look and revisit the characteristics over Manders. But once again, because the function that was looked at in Manders is the use of force policy, whereas the function that we are looking at here today in this case is the function of how the sheriff operates his jails. The differences in functions allows this court to reverse the um Manders in the 11th Circuit Court of Appeals 2003 case. Thank you. But not without having to overrule Purcell, correct? That is correct. The court would have to overrule Purcell, but I will respectfully discount the importance of Purcell because of the fact that its holding completely relies upon Manders. But you understand we can't do unless we're sitting on bond, right? Yes. I do recognize that administrative issue here, Your Honor. Yes. Thank you very much. Thank you, counsel. Thank you. Thank you, Your Honors.